**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**MICHAEL BAXTER,**

     **Plaintiff,**

**v.**                            **CASE NO. 5:19cv216-MCR/MJF**

**LOUIS S ROBERTS, III,**
**TREVOR LEE, DEPUTY,**

     **Defendants.**

_____/

## <u>ORDER</u>

In this civil rights case, *see* 42 U.S.C. § 1983, Plaintiff Michael Baxter brings constitutional claims of excessive force and false arrest against Deputy Trevor Lee, individually, and Louis S. Roberts, III, in his official capacity as the Sheriff of Okaloosa County, arising out of Baxter's arrest on December 24, 2017. Baxter also asserts state common law claims of false arrest and battery. Pending are Defendants' Motions for Summary Judgment, ECF Nos. 31, 32, and Defendants' Amended Motion to Strike Undisclosed Witness, Cory Finch, ECF No. 40. Having fully reviewed the matter, the Court finds that the motions are due to be granted.

## I.    Background[1]

On December 24, 2017, Deputy Trevor Lee of the Jackson County Sheriff's Office stopped a blue pickup truck driven by Plaintiff Michael Baxter.  On that evening, according to Baxter's deposition testimony, he had stopped at a convenience store, where he purchased gas and a beer.  He returned to the highway, changed lanes to pass a slow-moving vehicle after using his blinker and was pulled over by Deputy Lee.  *See* ECF No. 33-2, 33 (Baxter Depo. at 31).  Deputy Lee's body-worn video camera ("bodycam") captured the encounter with Baxter on tape. The tape shows that Lee initially approached the passenger side of the truck, asked Baxter if he was ok, explaining, "you were all over the road."  Baxter did not deny this but explained that he was trying to make a phone call.[2]  Deputy Lee immediately noticed a beer can in the front seat and informed Baxter that he had committed a traffic violation by having an open alcohol container in the vehicle.  Baxter replied,

---

[1] For the limited purposes of this summary judgment proceeding, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," which in this case is the plaintiff.  *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (internal marks omitted).

[2] It is clear from the video that Baxter's comment was offered to explain what the deputy described observing about his driving.  Baxter is not on the phone at the time but is seen on tape eating a snack when Lee opened the door.

CASE NO. 5:19cv216-MCR/MJF

"Sir, I haven't been drinking on it."[3]  Baxter then searched around the truck for his vehicle registration but was unable to locate it.  Lee told him to keep looking while he went to his vehicle to check Baxter's license.

When Lee returned to Baxter's passenger side door, Baxter was on the phone with his girlfriend; he remained on the phone until his arrest.[4]  Deputy Lee informed Baxter he would be issuing a warning citation for the open container and that he should "sit tight" because he was also going to walk a canine around the vehicle for an open air dog sniff.[5]  Deputy Lee returned to his police vehicle a second time and began typing, presumably a written warning.  He then approached Baxter's truck on the driver's side and instructed Baxter to exit the vehicle so he could conduct an open air dog sniff.[6]  Instead of exiting immediately, Baxter repeatedly questioned Lee's basis for probable cause and persisted in asking why he needed to exit the vehicle for Lee to walk the dog to walk around.  Deputy Lee informed Baxter he

---

[3] Baxter did not deny that the container was open, at least partially open, asserting both in the video and in his sworn deposition that he "had not fully opened or consumed any of the beer." ECF No. 33-1 (Baxter's sworn declaration); *see also* ECF No. 33-2, at 33 (Baxter's depo.) ("I cracked the seal, and I never even opened the—I never even completely opened it and even got a sip out of it.").

[4] Baxter testified in his deposition that he'd had a prior encounter with Deputy Lee and thought he was "crooked," so when he realized it was Lee, he called his girlfriend and reported the stop to her in real time.  ECF No. 33-2 at 37 (Depo. at 35).

[5] At no time did Lee reference a need for sobriety testing.

[6] Lee did not return with a written warning ticket or the canine.

could be arrested for interfering with his deployment of a K-9 unit, and repeatedly instructed Baxter exit.  According to Baxter, he became flustered because his pants were caught on his seat belt (this is not clear on the video, but reasonable inferences are drawn in his favor at this stage).  Deputy Lee momentarily grabbed Baxter's arm but did not pull him out of the truck.  Instead, after repeated commands by Lee, Baxter stepped out of the vehicle voluntarily.

As Baxter stood, Deputy Lee commanded him to hand over his keys.  Baxter said, "No sir, they're my keys," and a struggle ensued.  Deputy Lee forcibly removed the keys from Baxter's hand while Baxter struggled to hold them, and Lee threw Baxter to the pavement face first, placing a knee on his back to place him in handcuffs.[7]  *See* ECF No. 33-2 at 38-43 (Depo. at 36-41).  Baxter contends that as a result, he suffered a chipped tooth and facial abrasions.[8]  ECF No. 33-1 (Baxter's

---

[7] Baxter stated in his written opposition briefs that even after the handcuffs were applied, Deputy Lee "continued to wrench on Plaintiff's arms." ECF Nos. 34 at 9, 35 at 15.  This statement, however, is not included in the statement of facts and is not supported by any record cite.  The Court did not find any such statement in Baxter's Declaration or deposition testimony.  Moreover, even if the statement were in Baxter's testimony, the assertion is contradicted by the objective videotape, which captured the encounter and does not show that Deputy Lee "continued to wrench on Plaintiff's arms" after he was secured.  As such, the statement is mere argument by counsel, and absent any record support for the assertion, it is not taken as true for purposes of summary judgment.

[8] Baxter also testified in his deposition that he suffered a broken nose, ECF No. 33-2 at 38 & 75, but he did not include this injury in his statement of facts in opposition to summary judgment and it is not stated in his more recent sworn declaration (dated October 26, 2020).  Also, a broken nose is not documented in the medical evidence.  At Baxter's request, he was taken to the hospital

declaration).  Deputy Lee charged Baxter with resisting an officer without violence and also issued a ticket for having an open container in the vehicle.

Sergeant Shane Tipton arrived shortly thereafter, and Deputy Lee deployed his dog, Roxy, for an open air sniff around the truck.  Lee reported that she alerted to the driver's side door, and he searched the pickup.  Lee found a small black pistol in the front passenger glove compartment, which Baxter had disclosed to him; no narcotics were found.  The pistol was collected for safe keeping, the vehicle was towed, and Baxter was taken to the hospital at his request before spending the night in jail.  Baxter said he overheard Lee laughing and telling other officers present that he had to charge him with something because he had "roughed him up."  Baxter lodged an oral complaint about Lee's conduct with Sergeant Tipton but contends the Sheriff took no action to investigate or discipline Lee.  Subsequently, according to Baxter, Lee followed him on at least two occasions, flashed his lights for Baxter to

---

and examined. The medical report of that examination shows that he suffered a swollen lip and complained of shoulder pain.  ECF No. 30-5.  Therefore, although the statement is in Baxter's deposition, his testimony is blatantly contradicted by the objective evidence of his medical records. *See Sears v. Roberts*, 922 F.3d 1199, 1208 (11th Cir. 2019) ("As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)).  And importantly here, counsel has not asserted this alleged injury in opposition to summary judgment.

pull over, and then merely passed by.  Ultimately, the State of Florida dismissed the charges against Baxter.

Deputy Lee's incident report, which he has verified as true, differs in some respects from Baxter's version of the events.[9]  According to the report, Lee stopped Baxter after observing the pickup truck swerve from left to right in its lane, striking the white fog line and the yellow center line several times.  He also reported that Baxter was noncompliant with orders to exit the vehicle (as is clear on the video) and, when Baxter finally agreed to exit, he instead began to place his hand in his pocket (this is not clear on the video—according to Baxter, his pants were caught on the seatbelt).  Deputy Lee reported that when he attempted to assist Baxter from the vehicle, Baxter "snatched away," and after a short struggle, he placed him into custody for resisting lawful commands.  (Lee omitted from the report his request that Baxter hand over his keys, which Baxter flatly refused to do, as clearly shown on the video).

Eight months later, on August 1, 2018, the Jackson County Sheriff's Office requested a criminal investigation by the Florida Department of Law Enforcement

---

[9] In completing the incident report, Lee failed to include as evidence the video of the incident recorded by his bodycam, contrary to policy.  Baxter contends that the Sheriff did not investigate this omission or discipline Lee for the failure to document the video.  There is no assertion that this failure to document resulted in a constitutional violation of Baxter's rights.

("FDLE") regarding allegations of misconduct involving the fabrication of evidence and falsifying of reports on the part of another deputy, Zachary Wester, with whom Lee sometimes worked.  In connection with that investigation, the FDLE reviewed files involving Lee as well.  The FDLE report noted a policy violation by Lee in connection with one arrest in March 2017, seven months before Baxter's arrest, on grounds that Lee's report contradicted the videotape of the incident.

In July 2019, Baxter filed an eight-count civil rights complaint against Lee and the Sheriff based on his arrest on December 24, 2017.  The claims against Lee individually include common law battery (Count II), excessive force in violation of the Fourth Amendment (Count IV), common law false imprisonment/arrest (Count V), and false arrest in violation of the Fourth Amendment (Count VIII).  Baxter raises the same causes of action against the Sheriff in his official capacity, asserting he is vicariously liable under state law for the wrongful conduct of Lee, acting within the scope of his employment (Counts I, VI), and asserting municipal liability for the alleged constitutional violations, which he contends resulted from the Sheriff's policy or practice of disregarding deputy misconduct or disregarding a need for policies governing supervision, hiring and training (Counts III, VII).  Lee and the

Sheriff move for summary judgment on all claims and move to strike the statement of an undisclosed witness.

## II.     Discussion

### A.     Motion to Strike Undisclosed Witness

Pursuant to Rule 26(a), parties are required to "disclose the name and identifying information of persons 'likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims and defenses.'"  Fed. R. Civ. P. 26(a)(1)(A)(i).  Rule 26(e) directs the parties to continue to supplemental their Rule 26 disclosures if they learn "that in some material respect the disclosure or response is incomplete or incorrect."  Fed. R. Civ. P. 26(e)(1)(A).  A failure to disclose a witness may result in exclusion of that witness as evidence on a motion or at trial, unless the failure is harmless or was substantially justified.  *See Rigby v. Philip Morris USA Inc.*, 717 F. App'x 834, 835 (11th Cir. 2017) (citing Fed. R. Civ. P. 37(c)(1)).  In making this determination, the district court considers:  "(1) the importance of the testimony, (2) the reason for the failure to disclose the witness earlier, and (3) the prejudice to the opposing party if the witness had been allowed to testify."  *R.M.R. ex rel. P.A.L. v. Muscogee Cnty. Sch. Dist.*, 165 F.3d 812, 818 (11th Cir. 1999) (citing *Fabrica Italiana Lavorazione*

CASE NO. 5:19cv216-MCR/MJF

*Materie Organiche S.A.S. v. Kaiser Aluminum & Chem. Corp*., 684 F.2d 776, 780 (11th Cir. 1982)).   Moreover, after a scheduling deadline has expired, the deadline may be modified only on a showing of good cause, which requires a showing of diligence.  *See* Fed. R. Civ. P. 16(b)(4); *see Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1418 (11th Cir. 1998) ("This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'") (quoting Rule16's advisory committee's note).

Defendants move to strike the statement of former deputy, Sergeant Corey Finch, ECF No. 33-9, which Baxter attached to his responses in opposition to summary judgment.  Finch was not timely disclosed as a witness in this case, and his statement was not taken until October 18, 2020, over one month after the close of discovery in mid-September.   Baxter argues the failure to disclose was inadvertent.  As background, Finch had been Lee's supervisor for a time and also supervised Zachary Wester.  When over 40 cases were filed against Wester and the Sheriff claiming Wester fabricated evidence (some cases also included Lee as a defendant), the Court consolidated them for discovery. Baxter's case was not formally consolidated with the Wester cases.[10]  Nonetheless, Baxter's counsel also

---

[10] When the Court inquired as to whether consolidation would be appropriate, the parties jointly responded that the facts of this case were separate and unrelated to the Wester litigation.

represents many plaintiffs in the Wester consolidated litigation and states that they all participated informally in the consolidated discovery, which explains the inadvertent failure to disclose Finch for purposes of this case. Baxter argues that there is no prejudice because Defendants themselves disclosed Finch as a witness in the Wester litigation, the FDLE report of Finch's interview referencing Lee had been exchanged in discovery, *see* ECF No. 41-4, and a late deposition could be allowed.

The substance of Finch's late-disclosed sworn statement is consistent with the FDLE report. Sometime in 2016, Finch began to voice concerns over whether Wester and Lee had probable cause for traffic stops they were conducting—he said they would state similar grounds for all the stops (such as crossing over the line or one brake light out), some stops were reported as occurring before they were done with another, and some appeared to be targeting individuals whom they thought had a drug history. Finch requested that a dash camera be installed in Wester and Lee's vehicles, but to his knowledge, this never happened. He said he voiced his concerns about Wester and Lee's conduct until he left the department in May 2018,[11] and that, although the Sheriff agreed to investigate, at some point, he told investigators to leave Lee alone. *See* ECF No. 33-9 (Finch's statement at 9-10, 14-16, 26-27, 44-

---

[11] Finch was placed on administrative suspension in November 2017 and left the department in May 2018.

45).   Baxter contends this shows a policy by the Sheriff to disregard the constitutional violations of deputies.

The Court finds that Baxter's failure to disclose Finch for purposes of this case is neither substantially justified nor harmless.  *See Rigby*, 717 F. App'x at 835. Despite the Defendants' knowledge of this witness generally from the consolidated discovery and the FDLE report, there was no indication Finch would be a witness in Baxter's case until after the close of discovery and after the Sheriff and Lee had each filed summary judgment motions. On review of the statement, the Court finds it is not so important that its substance outweighs the prejudice of this late disclosure. Finch's concerns were based on his own suspicions—he did not have personal knowledge of unconstitutional stops nor did he reference knowledge of any actual complaint against Lee.  Importantly, despite the fact that the FDLE's report had been available well before the discovery deadline expired, Baxter has offered no justification for why he did not obtain Finch's sworn statement *before* the close of discovery.[12] And allowing the belated disclosure is not harmless because it no doubt

---

[12] The Plaintiff incorrectly suggests that the deadline for discovery in this case was originally set for November 26, 2020 and then "advanced" to September 14, 2020.  As reflected on the docket, the original discovery deadline of October 2, 2019, was extended to June 2020.  In In May 2020, an order was entered in error establishing a November 26 discovery deadline.  The error was noted and that order vacated in early June (reinstating the June 15, 2020 discovery
CASE NO. 5:19cv216-MCR/MJF

would lead to more delay, giving rise to the need for supplemental briefing, and perhaps even more discovery requests in an attempt to rebut the statements.  Finding no showing that the statement is of great importance and no showing of diligence to justify modifying the scheduling order to allow either the late disclosure or a late deposition, the Court will grant the motion to strike.

### B.    Summary Judgment Motions

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.").  The moving party bears the burden of establishing that there is no genuine dispute of fact and that the plaintiff has failed to establish an essential element of the claim.  *See Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," which in this case is Baxter.  *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265

---

deadline).  On June 12, 2020, by joint motion of the parties, the discovery deadline was extended to September 14, 2020.

CASE NO. 5:19cv216-MCR/MJF

(11th Cir. 2008) (internal marks omitted).   To avoid summary judgment, the nonmoving party must then go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal marks omitted).   The mere existence of some factual dispute will not defeat an otherwise properly supported summary judgment motion—there must be a "*genuine issue of material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247-47).

### 1.    **Constitutional Claims against Lee**

Baxter asserts that Lee violated his Fourth Amendment rights to be free from an illegal stop and arrest (Count VIII) and, alternatively, subjected him to excessive force (Count IV).  Lee asserts he committed no constitutional violation and is entitled to qualified immunity.

Under § 1983, a person acting under color of state law is personally liable for the deprivation of an individual's federal statutory or constitutional rights.  42 U.S.C. § 1983.  An individual state actor is shielded from suit and liability for damages by qualified immunity, provided his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982); *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020). To be entitled to qualified immunity, the government official must show he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). If so, the burden shifts to the plaintiff show qualified immunity does not apply by establishing: (1) that the defendant violated a constitutional right, and (2) that this right was clearly established at the time of the alleged violation. *Id.* at 1264 (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)). These two inquiries may be addressed in any order, "but it is 'often beneficial' to analyze them sequentially." *King v. Pridmore*, 961 F.3d 1135, 1142 (11th Cir. 2020 (quoting *Plumhoff v. Rickard,* 572 U.S. 765, 774 (20140); *see also Pearson,* 555 U.S. at 236.

Here, there can be no genuine dispute that Lee was engaged in a discretionary function within the scope of his duties as a Jackson County Deputy Sheriff when he stopped and arrested Baxter. Thus, to defeat Lee's claim of qualified immunity, Baxter must show that Lee violated a clearly established constitutional right of which a reasonable officer in the same circumstances would have known.

### a.    Investigatory Stop and Arrest

The Fourth Amendment to the Constitution, applicable to the states through the Fourteenth Amendment, guarantees the right to be free from unreasonable searches and seizures.  U.S. Const. amend. IV.  A vehicle stop must be supported either by "probable cause to believe a traffic violation has occurred" or a reasonable suspicion to believe criminal activity is afoot, like a brief investigative *Terry*[13] stop. *United States v. Gibbs*, 917 F.3d 1289, 1294 (11th Cir. 2019) (citing *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008)).  There is a two-part inquiry for determining whether an investigative stop is reasonable:  (1) whether the officers had reasonable suspicion to seize the individual; and (2) whether the stop was reasonably related in scope to the circumstances which justified the stop initially. *United States v. Acosta*, 363 F.3d 1141, 1144-45 (11th Cir. 2004).  A warrantless arrest is a seizure and must be justified by probable cause.  *See Alston v. Swarbrick*, 954 F.3d 1312, 1318 (11th Cir. 2020).  It is well-accepted that to satisfy the Fourth Amendment, "an arrest must be objectively reasonable based on the totality of the circumstances."  *Id.*; *see also Jackson v. Sauls*, 206 F.3d 1156, 1165-66 (11th Cir.

---

[13] *See Terry v. Ohio*, 392 U.S. 1 (1968).

2000).  "Subjective intentions play no role" in the Fourth Amendment analysis.[14]

*Whren v. United States*, 517 U.S. 806, 813 (1996).

Baxter contends there is a dispute of fact as to whether Lee had a reasonable suspicion to stop his vehicle.  The Court disagrees.  Lee stated Baxter was swerving within his lane.  He observed the vehicle touching the lines on either side of the lane multiple times, which justified a stop.[15]  Baxter stated in his declaration and deposition testimony that he was stopped after passing a slow-moving vehicle. Baxter's counsel argues  that when an "officer makes deliberately false statements to support a false arrest, there is a clear violation of a plaintiff's constitutional

---

[14] When a stop or arrest is illegal, even a *de minimis* use of force is excessive, and in that case, there is no discrete excessive force claim, it "is subsumed in the illegal stop or arrest claim." *Jackson*, 206 F.3d at 1171; *see also Alston*, 954 F.3d at 1319 (stating "[e]ven *de minimis* force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect" (internal quotation omitted)).  In that case, the force used is reflected in damages, which include "damages for any injury, pain and suffering, and mental anguish caused by the force used to effect that false arrest, regardless of whether the force would have been reasonable or excessive had there been probable cause." *Turner v. Jones*, 415 F. App'x 196, 201 (11th Cir. 2011) (citing *Williamson v. Mills*, 65 F.3d 155, 158–89 (11th Cir. 1995)).

[15] Lee stated in his deposition and his report that he thought he had probable cause based on Florida's statute regarding failure to maintain a lane. *See* Fla. Stat. § 316.089.  Under Florida law, "the failure to maintain a single lane alone cannot establish probable cause when the action is done safely" but may establish probable cause in appropriate circumstances. *Hurd v. State*, 958 So. 2d 600, 603 (Fla. 4th DCA 2007).  For instance, weaving several times within a single lane has been held sufficient to justify a stop even in the absence of evidence to show endangerment to others and where no traffic violation had occurred. *See Roberts v. State*, 732 So.2d 1127, 1128 (Fla. 4th DCA 1999) (officer's suspicion of driving while impaired based on a driving pattern of "weaving significantly from side to side within the lane" provided a valid basis for the stop in the absence of conduct rising to a traffic violation).

rights," ECF No. 34 at 16, but Baxter himself did not state that Lee made a false statement, and the assertion is not supported by any record cite.  Baxter also did not expressly deny that he had been weaving multiple times within his lane, as asserted by Lee.  Moreover, the video shows that when Lee told Baxter he had been all over the road, Baxter offered only the explanation that he had been making a telephone call.  Accepting that Baxter had been making a telephone call, had passed a vehicle, and that he made no statement denying that his truck had been weaving within his lane as asserted by Lee or asserting Lee's statement was false, there is no evidence to contradict Lee's statement.   The summary judgment standard is not a license to speculate or draw unreasonable inferences.  *See Ave. CLO Fund, Ltd. v. Bank of Am., N.A*., 723 F.3d 1287, 1294 (11th Cir. 2013) ("All reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable.") (quoting *Blackston v. Shook and Fletcher Insulation Co*., 764 F.2d 1480, 1482 (11th Cir. 1985)).  Therefore, Lee had at least a reasonable suspicion based on his observation.  *See Roberts v. State*, 732 So.2d 1127, 1128 (Fla. 4th DCA 1999) (a driving pattern of "weaving significantly from side to side within the lane" provided a valid basis for a stop in the absence of conduct rising to a traffic violation).  Also, to the extent Lee was

mistaken in believing he had probable cause to stop pursuant to Fla. Stat. § 316.089, he undoubtedly had arguable probable cause or arguable reasonable suspicion and is therefore shielded by qualified immunity.   An officer is shielded by qualified immunity if he was mistaken about the existence of a reasonable suspicion or probable cause but had at least arguable reasonable suspicion or arguable probable cause.  *See Jackson*, 206 F.3d at 1165-66.

Baxter also argues that Lee unreasonably prolonged the scope of the stop by ordering him out of the vehicle for the sole purpose of unlawfully investigating for drugs via a dog sniff, without probable cause or a reasonable individualized suspicion of narcotics to prolong the stop.   Again, the Court disagrees.   During a lawful traffic stop, an officer may instruct a driver or occupant to exit the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977) (stating the government's "legitimate and weighty" interest in officer safety during a vehicle stop outweighs the "*de minimis*" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle).   While Baxter is correct that a lawful stop must be tied to the underlying justification for the stop, and "may last no longer than is necessary to effectuate [its] purpose," *Rodriguez v. United States,* 575 U.S. 348, 354 (2015); *see also Illinois v. Caballes,* 543 U.S. 405, 407 (2005) ("A seizure that is justified solely

by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission."), Lee had not yet given Baxter the ticket, and, especially in light of the open container observed in the truck, the scope of the stop was sufficiently broad to include a lawful order to step out of the truck and hand him the keys for safety. *See Mimms*, 434 U.S. at 110-11. The open container was a statutory violation, *see* Fla. Stat. § 316.1936, which objectively justified further inquiry, including an order to exit the vehicle. Despite the fact that Lee stated he intended to conduct a dog sniff, his subjective motivations have no bearing on the objective inquiry into whether the stop and its scope were reasonable on the totality of the circumstances. *See United States v. Andres*, 960 F.3d 1310, 1317 (11th Cir. 2020); *United States v. Lewis*, 674 F.3d 1298, 1304 n. 3 (11th Cir. 2012). On the undisputed facts, no reasonable officer in the same circumstances would have thought it was unconstitutional to order Baxter out of the vehicle after observing an open container. And in fact, the stop was *not* prolonged by a dog sniff (as Lee admittedly subjectively intended). Instead, it was prolonged by Baxter's resistance to lawful commands to exit the vehicle and hand over the keys for safety.[16]  No constitutional violation occurred.

---

[16] Had Baxter complied and Lee successfully prolonged the stop by conducting a dog sniff, the analysis may have taken a different turn.

CASE NO. 5:19cv216-MCR/MJF

As to the arrest, Baxter argues there was no probable cause, maintaining he was compliant.[17]   However, the video shows otherwise, and again, the Court finds no constitutional violation.   Baxter was arrested for resisting an officer without violence, in violation of Fla. Stat. § 843.02.   This statute states it is a misdemeanor offense when (1) without violence, an individual "resist[s], obstruct[s], or oppose[s] any [law enforcement] officer" (2) while the officer is engaged "in the lawful execution of any legal duty."   Fla. Stat. § 843.02; *see also Alston*, 954 F.3d at 1319; *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009).   Words alone can obstruct an officer who is engaged in serving process, legally detaining a person, or asking for assistance. *See Davis v. Williams*, 451 F.3d 759, 765 n. 9 (11th Cir. 2006) (interpreting Florida law); *see also State v. Legnosky,* 27 So. 3d 794, 797 (Fla. 2d DCA 2010) (construing Fla. Stat. § 843.02 and noting that the focus of the inquiry is on whether the words "were intended to hinder the police officer in the exercise of his duties").   As already noted, conducting a lawful traffic stop qualifies as the lawful execution of a legal duty and lawful detention, and during a lawful traffic stop, an officer may instruct a driver or occupant to exit the vehicle. *See Mimms*,

---

[17] Baxter stated he overheard Lee telling other deputies that he had to charge Baxter with something because he had roughed him up, and therefore, he argues, he was arrested to cover up Lee's use of force.

434 U.S. at 110-11.  Lee was conducting a lawful vehicle stop.  The video shows clearly that Baxter resisted multiple commands to exit the vehicle, and when he did exit voluntarily, he immediately resisted Lee's command to give him his keys as a safety measure, both by words and his actions of noncompliance.[18]  Lee is therefore entitled to summary judgment and qualified immunity on the false arrest claim (Count VIII).

### b.    Excessive Force

Baxter asserts a stand-alone count of excessive force alternative to the false arrest claim.  Lee argues there was no constitutional violation because the force used was *de minimis*, and he is therefore entitled to qualified immunity.  The Court agrees with Lee.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."  *Alston*, 954 F.3d at 1319 (quoting *Vinyard v. Wilson*, 311 F.3d 1340,

---

[18] The Court notes that the case of *DeRosa v. Sheriff of Collier Cnty., Fla.*, 416 F. App'x 839, 840-41 (11th Cir. 2011) addressed similar issues but is distinguishable.  There, the court concluded that a passenger's verbal criticisms alone of the officer during a traffic stop were not sufficient to impede the officer's execution of his legal duty, and because the officer lacked arguable probable cause to arrest the passenger for resisting without violence, he was not entitled to qualified immunity.  In this case, by contrast, Lee was objectively justified in ordering Baxter out of the vehicle based on the open container, and Baxter's actions, not only his words, impeded Lee in the execution of his legal duty during the traffic stop.

1347 (11th Cir. 2002). Any use of force must be "reasonably proportionate to the need for that force." *Galvez v. Bruce*, 552 F.3d 1238, 1243 (11th Cir. 2008) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002)). "It is well established that 'the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Jackson,* 206 F.3d at 1170 (quoting *Graham,* 490 U.S. at 396). The reasonableness of any force used "must be judged on a case-by-case basis 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir.1993) (quoting *Graham*, 490 U.S. at 396). This fact-intensive inquiry requires consideration of "(1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Stryker*, 978 F.3d at 773 (quoting *Graham*, 490 U.S. at 396). However, the Eleventh Circuit "has long declined to entertain claims of excessive force predicated upon the use of *de minimus* force by law enforcement." *Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011); *see also Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of *de minimis* force,

without more, will not support a claim for excessive force in violation of the Fourth Amendment.").

It is not necessary to consider the *Graham* factors because the record reflects that the use of force in this instance was *de minimis* and no greater than that required to effect the arrest. Baxter was taken to the ground and handcuffed after being commanded multiple times to exit the vehicle, and when he finally exited, he immediately refused to obey the command to hand over his keys for officer safety. Baxter was not forcibly removed from the truck, and there is no evidence that Lee used any force after Baxter was handcuffed. Moreover, the fact that minor injuries occurred does not preclude a finding of *de minimis* force. *See, e.g., Croom*, 645 F.3d at 1252-53 (deputy pushed elderly plaintiff to the ground from a squatting position and held her there with a foot or knee in the back for up to ten minutes); *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003) (finding force *de minimis* where officer forced plaintiff to the ground and kneed him in the back while handcuffing him); *Nolin*, 207 F.3d at 1258 n.4 (finding *de minimis* force where officer grabbed plaintiff, shoved him a few feet against a vehicle, pushed a knee into his back, pushed the plaintiff's head against the van, and searched plaintiff's groin in an uncomfortable manner, causing minor bruising); *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th

Cir. 1997) (granting qualified immunity where officers "slammed" plaintiff against the wall, kicked his legs apart, and required him to raise his arms above his head, causing minor injuries, which would not leave every reasonable officer "to conclude the force was unlawful"). The Court finds that Lee's use of force to effect the arrest was *de minimis*, which is not unconstitutional under clearly established precedent. *See Durruthy,* 351 F.3d at 1094 ("Here, even if the force applied by [the officer] in effecting the arrest—forcing Durruthy down to the ground and placing him in handcuffs—was unnecessary, plainly it was not unlawful. The amount of force used was de minim[i]s."). Lee is therefore entitled to summary judgment and qualified immunity on the alternate stand-alone excessive force claim (Count IV).

### 2.    Constitutional Claims against the Sheriff

Absent a constitutional violation by Lee, there is no basis for holding the Sheriff liable, and he is entitled to summary judgment on Baxter's constitutional claims. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1171 (11th Cir. 2009) (absent an underlying constitutional violation, there is no need to examine whether a violation was caused by policies); *Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) (same). Moreover, even if a constitutional claim of Baxter had

merit, he has not shown any policy, custom or single decision of the Sheriff that would have caused it.

A municipality or other local government—here, the Sheriff's Office[19]— is liable under § 1983 for monetary, declaratory, or injunctive relief where the allegedly unconstitutional action implements an official policy of the governing policymaker or the action was taken pursuant to a widespread custom or practice tacitly authorized by the final policymaker—here, the Sheriff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The Sheriff is not subject to liability simply for employing a tortfeasor. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) (no vicarious liability under § 1983). Instead, to impose official capacity liability, the Sheriff's "policy, custom, or practice" must be "the moving force behind the unconstitutional acts." *Brown v. City of Hialeah*, 30 F.3d 1433, 1438 (11th Cir. 1994) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985)). When on notice of misconduct, a Sheriff's "failure to correct the constitutionally offensive actions of its [deputies] may rise to the level of a 'custom or policy' if [he] tacitly authorizes these actions or displays deliberate indifference towards the [deputies']

---

[19] A suit against the Sheriff in his official in his official capacity is a suit against the government entity, the Sheriff's Office. *See Lewis v. Clarke*, 137 S. Ct. 1285, 1291, 197 L. Ed. 2d 631 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself.").

misconduct." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) (requiring proof that the municipality was at fault for establishing or maintaining the policy or custom).

Baxter offers no evidence of any policy and practice of disregarding deputy misconduct or deliberate indifference to a need to establish procedures for proper hiring, training, supervision, investigation and discipline of deputies. He argues that there may be liability for even a single decision, citing *Mandel v. Doe*, 888 F.2d 783, 791-93 (11th Cir. 1989) (noting a municipality may be liable for a single decision of a final policy maker that caused a deprivation of rights). But on review of the record, the Court finds no evidence of any single decision that caused Lee to make the alleged unconstitutional stop or arrest, no evidence that the Sheriff delegated authority to Lee to make illegal stops or illegal arrests, and no evidence that the Sheriff knew or should have known that Lee had engaged in such misconduct and ratified it by a failure to discipline him. At most, Baxter cites the FDLE's investigation report from an investigation of another officer that began in August of 2018—eight months after Baxter's arrest. Although the report noted one policy violation by Lee for drafting an incident report of an arrest in March 2017 that contradicted his bodycam video, there is no evidence that this contradiction had been

brought to the Sheriff's attention earlier and disregarded.[20]   In any event, one instance of a failure to properly document an arrest is insufficient to show a policy of acquiescing in misconduct or a pattern of misconduct by Lee.  Also, the Sheriff's failure to review the file sooner does not amount to ratification of unconstitutional conduct nor can it be considered the moving force behind Lee's alleged constitutional violations in this instance.  Baxter has not pursued his claims regarding a defective policy of hiring or training, and he referenced no evidence to suggest the Sheriff was aware of a risk and deliberately disregarded it.  *See Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (more than gross negligence is required to establish deliberate indifference under § 1983).  The Sheriff is therefore entitled to summary judgment on Counts III and VII.

### 3.    State Law Claims against Lee and the Sheriff

Under Florida law, the Sheriff can be held vicariously liable for the tortious actions of his deputies in the course of their duties.  *See Fields v. Devereux Found., Inc.*, 244 So. 3d 1193, 1196 (Fla. 2d DCA 2018).  Conduct is within the scope of employment where it: (1) was of "the kind [the deputy] was employed to perform,"

---

[20] As discussed earlier, Baxter also offered the statement of Corey Finch to support the existence of a policy of disregarding deputy misconduct, but the Court granted the motion to strike that statement and it is therefore not considered on summary judgment.

(2) occurred "substantially within the time and space limits authorized or required by the work to be performed," and (3) was "activated at least in part by a purpose to serve the master." *Iglesia Cristiana La Casa Del Señor, Inc. v. L.M.*, 783 So. 2d 353, 357 (Fla. 3d DCA 2001). Also, an officer acting in the scope of his employment is entitled to statutory immunity against state law tort claims "unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).

As already noted, there is no question that Lee was acting within the scope of his employment in making a traffic stop and arrest while on duty as a deputy, and his conduct was activated at least in part by a purpose to serve the goals of the Sheriff's Office. *See Iglesia Cristiana La Casa Del Señor,* 783 So. 2d at 357. A claim of false arrest in Florida has three elements: "(1) an unlawful detention and deprivation of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances; and (3) an intentional detention." *Manners v. Cannella*, 891 F.3d 959, 975 (11th Cir. 2018) (quoting *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1409 (S.D. Fla. 2014)) (internal brackets omitted). However, the existence of probable cause bars the claim of false arrest. *Id.* As already concluded, Lee had reasonable suspicion for the stop and probable cause for

the arrest.  Therefore, the Sheriff and Lee are entitled to summary judgment for state law false arrest.

Baxter also asserts state law claims of battery against the Sheriff and Lee (Counts I and II).  Florida law provides that a police officer is liable for battery only if the force used was clearly excessive.[21]  *Jean-Baptiste v. Jones*, 424 F. Supp. 3d 1251, 1263 (S.D. Fla. 2019); *Cordoves v. Miami-Dade Cnty.*, 92 F. Supp. 3d 1221, 1238 (S.D. Fla. 2015).  Florida's "clearly excessive" standard is equivalent to the Fourth Amendment standard for excessive force.  *Thorkelson v. Marceno*, No. 219cv263-FTM-38-MRM, 2020 WL 4428474, at *3 (M.D. Fla. July 31, 2020) (citing *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006)).  Thus, an assault does not amount to "the kind of extraordinary conduct required for bad faith, malice, and wanton and willful disregard" unless the defendant's "intentional physical contact was repeated or prolonged, caused permanently injury, or was otherwise reprehensible."  *O'Boyle v. Thrasher*, 638 F. App'x 873, 879 (11th Cir. 2016) (citing *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987)).

---

[21] Under Florida law, a battery claim requires proof that the defendant acted with the intent to cause "a harmful or offensive contact" and that contact occurred.  *City of Miami v. Sanders*, 672 So.2d 46, 47 (Fla. 5th DCA 1996).

Here, as concluded above, the force used was *de minimis* and reasonably necessary to effect the arrest.   Therefore, the Sheriff is entitled to summary judgment. *Ainsworth v. Norris*, 469 F. App'x 775, 777 (11th Cir. 2012) ("under Florida law, an alleged battery that was committed incident to arrest does not give rise to an independent tort") (citing *Lester v. City of Tavares*, 603 So. 2d 18, 19–20 (Fla. 5th DCA 1992)).  Because Lee did not display the type of repeated or prolonged physical contact that could be considered reprehensible, he is shielded from state law liability under Fla. Stat. § 768.28(9)(a).

Accordingly:

1.     Defendant Louis S. Roberts II's Motion for Summary Judgment, ECF No. 31, is **GRANTED**.

2.     Defendant Trevor Lee's Motion for Summary Judgment, ECF No. 32, is **GRANTED**.

3.     Defendants' Amended Motion to Strike Undisclosed Witness, ECF No. 40, is **GRANTED**.

CASE NO. 5:19cv216-MCR/MJF

4.    The Clerk is directed to enter judgment accordingly, tax costs against the Plaintiff, and close the file.

**DONE AND ORDERED** this 28th day of March 2021.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**